**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN ASSOCIATION OF PEOPLE WITH DISABILITIES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> LELAND DUDEK, *in his official capacity as Acting Commissioner of the Social Security Administration*, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-00977-APM |

**BRIEF OF CENTER FOR MEDICARE ADVOCACY AND MEDICARE RIGHTS CENTER AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Alice Bers
CENTER FOR MEDICARE ADVOCACY
P.O. Box 350
Willimantic, CT 06226
Tel.: (860) 456-7770
abers@medicareadvocacy.org

April 9, 2025

*Counsel for Amici Curiae*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION AND INTEREST OF *AMICI CURIAE* ........................................................... 1

ARGUMENT ............................................................................................................................ 2

    I.     Background and Critical Role of Medicare for People with Disabilities ............... 2

    II.    Disruptions to Core SSA Services Also Disrupt Crucial Medicare Services
           Because the Two Programs Interact ....................................................................... 5

          A.    How Medicare Intersects with Social Security ............................................. 5

               1. Eligibility and Enrollment........................................................................... 5

               2. Premiums .................................................................................................... 6

               3. Services for Low-Income Beneficiaries...................................................... 7

          B.    The Erosion of Core SSA Functions Through Mass Workforce
              Reductions Has Severe Consequences for Disabled Medicare
              Beneficiaries ................................................................................................. 8

    CONCLUSION.................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Machado v. Leavitt*,
　542 F. Supp. 2d 185 (D. Mass. 2008) ........................................................................ 2

*Xiufang Situ v. Leavitt*,
　240 F.R.D. 551 (N.D. Cal. 2007) .............................................................................. 2

**Statute**

42 U.S.C. § 1395 ................................................................................................................ 2

**Other Authorities**

Alex Cottrill et al.,
　KFF, *Income and Assets of Medicare Beneficiaries in 2023* (Feb. 5, 2024),
　https://perma.cc/8BUT-GRDW. ............................................................................ 4, 7

Aliss Higham,
　*Social Security in 'Death Spiral' After DOGE Cuts*, Newsweek (Apr. 7, 2025),
　https://www.newsweek.com/social-security-death-spiral-doge-cuts-2056252. ...................... 10

Christine Huberty,
　Ctr for Medicare Advocacy, *Cuts to the Social Security Administration Are Cuts to
　Medicare*, Alert (Mar. 6, 2025), https://perma.cc/A75K-JBDZ. .............................. 10

CMS,
　*2021 Medicare Current Beneficiary Survey Early Look* (Apr. 2023),
　https://www.cms.gov/files/document/2021-medicare-current-beneficiary-survey-early-
　look.pdf. ....................................................................................................................... 4

CMS,
　*Medicare Enrollment Dashboard,*
　https://data.cms.gov/tools/medicare-enrollment-dashboard (last modified Mar. 28, 2025). ....... 3

David Blumenthal et al.,
　*Medicare at 50—Origins and Evolution*, 372 New Eng. J.Med. 479 (2015). ........................... 2

Julie Carter,
　Medicare Rights Ctr, *Trump Administration and Elon Musk's DOGE Closing Social
　Security Offices, Harming Access to Services* (Mar. 13, 2025),
　https://perma.cc/N4X5-KK3V. .............................................................................. 10

Juliette Cubanski et al.,
   KFF, *Overall Satisfaction with Medicare is High, But Beneficiaries Under Age 65 With Disabilities Experience More Insurance Problems Than Older Beneficiaries* (Oct. 26, 2023), https://perma.cc/X66W-SVYV. ...................................................................... 9

Justice in Aging,
   *Medicare Part A Conditional Applications,* Fact Sheet (Jan. 2025),
   https://perma.cc/2D4H-V69V. ................................................................................... 6

KFF,
   *An Overview of Medicare* (Feb. 13, 2019), https://perma.cc/BF5Y-4L9P. ............................... 4

Kristina Hanson et al.,
   Henry J. Kaiser Family Foundation, *Understanding the Health-Care Needs and Experiences of People With Disabilities* (Dec. 2003), https://www.kff.org/wp-content/uploads/2013/01/understanding-the-health-care-needs-and-experiences-of-people-with-disabilities-findings-from-a-2003-survey.pdf. ...................................................................... 5

Lisa Rein et al.,
   *Social Security Website Keeps Crashing, as DOGE Demands Cuts to IT Staff*,
   Wash. Post (Apr. 7, 2025), https://wapo.st/4lnBp63. . .............................................................. 12

Medicare Rights Center,
   https://www.medicarerights.org/contact. .............................................................................. 10

Rachel Gershon & Samantha Morales,
   Nat'l Ctr on Law & Elder Rights, *Payment Options for Individuals Who Owe Past-Due Medicare Premiums* (Nov. 2024), https://perma.cc/HG2E-GP4N. . ..................................... 6–7

SSA,
   *How do I sign up for Medicare?* (Apr. 17, 2023),
   https://www.ssa.gov/faqs/en/questions/KA-02125.html. ........................................................... 5

SSA,
   *Understanding the* Extra Help *with Your Medicare Prescription Drug Plan* (Jan. 2025),
   https://www.ssa.gov/pubs/EN-05-10508.pdf. .......................................................................... 8

## INTRODUCTION AND INTEREST OF *AMICI CURIAE*[1]

*Amici* Center for Medicare Advocacy and Medicare Rights Center represent the interests
of 68 million people nationwide who depend on Medicare for health insurance. Medicare
provides health and financial security to older adults and younger beneficiaries with disabilities.
While Social Security and Medicare are distinct programs, they are connected in significant
ways, and a properly functioning Social Security Administration (SSA) is critical to the effective
operation of Medicare. In the same way that defendants' dismantling of SSA's core functions
harms disabled people who rely on Social Security benefits, it also harms disabled people who
rely on Medicare for access to necessary medical care. *Amici* submit this brief to inform the
Court of the specific ways in which defendants' actions—in particular mass SSA workforce
reductions—undermine not only the Social Security program, but also the Medicare program. In
short, it is impossible to threaten the infrastructure of Social Security without also threatening the
infrastructure of Medicare. This in turn has severe consequences for beneficiaries that cannot be
rectified later with a remedy such as reimbursement. Inability to access Medicare often means
forgoing costly medical care, leading to worse health outcomes, sometimes with life-or-death
consequences.

The Center for Medicare Advocacy (CMA) is a national, nonprofit law organization that
works to advance access to comprehensive Medicare coverage, health equity, and quality health
care for older people and people with disabilities. Founded in 1986, CMA's work includes legal
assistance, advocacy, education, policy initiatives, and litigation of importance to Medicare
beneficiaries nationwide, with an emphasis on the needs of people with longer-term and chronic

---

[1] No party opposes the filing of this brief. No party or counsel for a party–nor any person other
than *amici* and their counsel–authored this brief in whole or in part or contributed any money
intended to fund its preparation or submission.

conditions. Its systemic advocacy is based on the experiences of the real people who contact

CMA every day. CMA has litigated cases on topics directly relevant to this matter. *See, e.g.,*

*Machado v. Leavitt*, 542 F. Supp. 2d 185 (D. Mass. 2008) (erroneous withholding of Medicare

premiums from beneficiaries' Social Security payments); *Xiufang Situ v. Leavitt*, 240 F.R.D. 551

(N.D. Cal. 2007) (improper implementation of Medicare prescription drug benefit for low-

income beneficiaries, including problems with SSA).

The Medicare Rights Center is a national, nonprofit organization that works to ensure

access to affordable and equitable health care for older adults and people with disabilities

through counseling and casework, educational programs, and legislative and administrative

advocacy. Medicare Rights was founded in 1989 to provide information and support to

beneficiaries, caregivers, advocates, and professionals. Its National Helpline receives thousands

of calls each year from people struggling to navigate enrollment into Medicare and other

interactions with SSA.

## ARGUMENT

## I.    Background and Critical Role of Medicare for People with Disabilities.

Established in 1965 as Title XVIII of the Social Security Act, Medicare is the federal health

insurance program that provides coverage to people at least 65 years old, regardless of their

income, medical history, or health status. 42 U.S.C. §§ 1395 *et seq*. Before Medicare's enactment,

nearly half of older adults lacked health coverage. By the program's 50th anniversary, only 2%

did. David Blumenthal et al., *Medicare at 50—Origins and Evolution*, 372 New Eng. J. Med. 479,

480 (2015). In 1972 Congress extended the program to cover individuals under 65 with long-term

disabilities. This group, like older adults, had very limited options for affordable health insurance

until Medicare offered coverage by law. *Id*. at 481. Like Social Security, Medicare is "not an

optional social safety net." Complaint (ECF #1) ¶ 43. It is also a statutory obligation, "born from

the recognition of [its] vital purpose" to ensure that people who were otherwise abandoned by the insurance market could nonetheless access medical care. *Id*. Without Medicare, older adults and people with disabilities faced the stark reality of being one illness away from financial devastation. Medicare also mitigates the fiscal strain of addressing the long-term, chronic conditions that many people with disabilities live with by covering ongoing needs such as preventive care, rehabilitative therapies, medication, and other services that maintain health and extend or support independence.

Eligibility for Medicare is generally linked to Social Security benefits. People age 65 or over qualify for Medicare if they or their spouse receive Social Security retirement payments. People under 65 typically become eligible for Medicare after they have applied for and received Social Security Disability Insurance (SSDI) payments for 24 months. It is therefore SSA that handles Medicare eligibility and enrollment processes, as well as Medicare premium collections and certain other functions. *See infra* § II.A. The Centers for Medicare and Medicaid Services (CMS) administers Medicare coverage, claims, and other aspects of the program.

Medicare consists of four parts, briefly described as follows: Part A covers hospital services and other types of inpatient care. Most beneficiaries receive Medicare Part A without paying a monthly premium. Part B covers physician visits and other outpatient services. Beneficiaries typically pay a monthly premium for Part B, although this varies according to income. Part C, also known as the "Medicare Advantage" program, provides the option of receiving Medicare benefits through a private health insurance plan, instead of directly from Parts A and B ("traditional Medicare"). Currently, Medicare's 68 million beneficiaries are roughly evenly divided between enrollment in traditional Medicare (Parts A and B), and in private Medicare Advantage plans (Part C). CMS, *Medicare Enrollment Dashboard*, https://data.cms.gov/tools/medicare-enrollment-dashboard (last modified Mar. 28, 2025).

Medicare Part D offers outpatient prescription drug coverage through privately-administered plans.

Relevant to this case, people with Medicare are more likely than the general population to have disabilities. While the roughly 8 million Medicare beneficiaries under age 65 are, by definition, disabled, beneficiaries across the entire age spectrum have disabling conditions or impairments that substantially limit their activities of daily living. In 2021, 45% of Medicare beneficiaries living in the community reported at least one disability, and nearly a quarter reported two or more disabilities. CMS, *2021 Medicare Current Beneficiary Survey Early Look*, at 2 (Apr. 2023) (disabilities included serious difficulty with activities such as walking, seeing, and concentrating or making decisions), https://www.cms.gov/files/document/2021-medicare-current-beneficiary-survey-early-look.pdf. In 2016, one quarter of Medicare beneficiaries reported being in fair or poor health, and 22% had five or more chronic conditions. Moreover, 12% were age 85 or older and 3% lived in a long-term care facility. KFF, *An Overview of Medicare* (Feb. 13, 2019), https://perma.cc/BF5Y-4L9P.

Medicare beneficiaries also have lower incomes and fewer financial resources to draw from compared to the general population. In 2023, half of all Medicare beneficiaries (32.6 million) lived on annual incomes below $36,000 per person, while one in four had incomes below $21,000 per person. Among older adults, median incomes declined with age and were lower for women than for men. Younger disabled Medicare beneficiaries (under 65), had the lowest median per capita income of any age group, with one quarter living on annual incomes of less than $15,000. Alex Cottrill et al., KFF, *Income and Assets of Medicare Beneficiaries in 2023* (Feb. 5, 2024), https://perma.cc/8BUT-GRDW.

In sum, Medicare is vital for people with disabilities because it provides access to health

services and financial protection from the astronomical cost of medical care. Without Medicare, disabled individuals are forced to delay or forgo necessary care, leading to worse health outcomes.[2] Timely access to Medicare benefits is critical for people with disabilities.

## II.    Disruptions to Core SSA Services Also Disrupt Crucial Medicare Services Because the Two Programs Interact.

### A.    How Medicare Intersects with Social Security.

As the plaintiffs note, SSA plays a crucial role in administering certain aspects of Medicare, serving as the primary point of contact for beneficiaries in several critical matters. Complaint ¶¶ 46–48.

#### 1.    Eligibility and Enrollment.

SSA handles determinations of eligibility for Medicare. The agency tracks whether individuals' Social Security covered earnings qualify them or their spouse for Medicare. It processes applications for SSDI benefits, and has a multi-level administrative appeals system for those who wish to challenge unfavorable disability determinations. SSA is also responsible for enrolling eligible individuals into Medicare, which in some cases requires in-person visits to local SSA Field Offices. SSA instructs people who need to apply for Medicare to either use its online application or to "make an appointment by calling us" at the agency's national 1-800 number. SSA, *How do I sign up for Medicare?* (Apr. 17, 2023), https://www.ssa.gov/faqs/en/questions/KA-02125.html.

There are certain Medicare enrollment situations in which in-person interactions with SSA are particularly critical. Some vulnerable, very low-income beneficiaries must submit a delicately-

---

[2] Kristina Hanson et al., Henry J. Kaiser Family Foundation, *Understanding the Health-Care Needs and Experiences of People With Disabilities* at 22 (Dec. 2003), https://www.kff.org/wp-content/uploads/2013/01/understanding-the-health-care-needs-and-experiences-of-people-with-disabilities-findings-from-a-2003-survey.pdf.

timed "Part A conditional application" in order to coordinate the benefits of Medicare and their state Medicaid program. A conditional Medicare enrollment, which does not take effect until the applicant's Medicaid benefits are also in place, is necessary to avoid a high Medicare premium bill, and it requires beneficiaries to make an in-person visit to a Social Security Field Office. Justice in Aging, *Medicare Part A Conditional Applications*, Fact Sheet (Jan. 2025), https://perma.cc/2D4H-V69V. Additionally, people who need to enroll in Medicare outside of one of its standard enrollment periods must obtain approval for a "Special Enrollment Period" (SEP) to avoid a late enrollment penalty. SSA is responsible for considering and granting requests for such SEPs based on exceptional circumstances. Beneficiaries may have to visit a local Field Office to have the SEP application processed and to provide supporting documentation.

As part of SSA's enrollment responsibilities, it is also tasked with general administration duties such as handling names changes (which often require an in-person visit to a Field Office), processing Medicare beneficiary death reports, and issuing replacement cards.

### 2.    Premiums.

SSA administers Medicare premiums. It is responsible for deducting Part B premiums directly from millions of beneficiaries' Social Security benefits each month. People who do not receive Social Security benefits receive bills to pay their Medicare Part B premiums directly. If they fall behind in premium payments, beneficiaries have an opportunity to pay the past due amounts before their Medicare Part B coverage is terminated. Beneficiaries generally must visit a local SSA Field Office to pay their back premium amount and to submit their request for continuation of Medicare coverage or coverage reinstatement. SSA also handles beneficiary requests to pay Medicare premium arrearages in installments, as well as requests to "waive" premium balances on the grounds of extreme financial hardship. Rachel Gershon & Samantha

Morales, Nat'l Ctr on Law & Elder Rights, *Payment Options for Individuals Who Owe Past-Due Medicare Premiums* at 2 (Nov. 2024), https://perma.cc/HG2E-GP4N.

SSA is responsible for determining whether beneficiaries have timely enrolled in Medicare Part B so that they are not subject to a late enrollment penalty on their Part B premium. The agency also determines whether beneficiaries may be eligible for an SEP to avoid the Part B late enrollment penalty. Beneficiaries who wish to challenge a penalty for late enrollment into Medicare Part B typically request relief from their local Social Security Field Office.

SSA also determines the amount of some Medicare premiums. The law requires that certain higher-income Medicare beneficiaries pay additional amounts, known as "income-related monthly adjusted amounts" (IRMAAs), on top of their standard Medicare Part B and Part D premiums. SSA uses information from beneficiaries' most recent available tax returns to calculate whether they are subject to an IRMAA and its amount. The agency issues letters notifying beneficiaries of the higher premium amounts and the reasoning behind its calculations. Beneficiaries who disagree with any aspect of SSA's determination regarding their IRMAA have the right to appeal to SSA. SSA also deducts IRMAAs directly from beneficiaries' Social Security payments and handles issues related to IRMAA arrearages.

### 3. Services for Low-Income Beneficiaries.

Medicare beneficiaries with disabilities are more likely than others to have low incomes,[3] and SSA plays an especially critical role for Medicare beneficiaries with lower incomes. Medicare's Part D prescription drug benefit features a Low-Income Subsidy that helps poorer beneficiaries pay their drug plan premiums, deductibles, and copayments. The current annual

---

[3] Alex Cottrill et al., KFF, *Income and Assets of Medicare Beneficiaries in 2023* (Feb. 5, 2024), https://perma.cc/8BUT-GRDW.

income limits for the Part D Low-Income Subsidy are $22,590 for a single person and $30,660 for a couple, with the value of the subsidy estimated to be about $6,200 per year. SSA, *Understanding the* Extra Help *with Your Medicare Prescription Drug Plan* at 1, 2 (Jan. 2025), https://www.ssa.gov/pubs/EN-05-10508.pdf. The benefit is crucial for helping Medicare beneficiaries afford—and thus take—their prescribed medications. SSA processes applications for the Part D Low-Income Subsidy from beneficiaries who are not automatically enrolled.

Low-income individuals may also be eligible for financial assistance from their state "Medicare Savings Program" (MSP). These programs help cover cost-sharing amounts that Medicare beneficiaries would otherwise be responsible for themselves, including premiums, deductibles, and coinsurance amounts. Historically, however, many people who are eligible for assistance from MSPs have not enrolled. To help boost MSP enrollment for eligible individuals, SSA sends data on Medicare beneficiaries who are eligible for the Part D Low-Income Subsidy to states so that states can use that information to initiate an MSP application.

### B. The Erosion of Core SSA Functions Through Mass Workforce Reductions Has Severe Consequences for Disabled Medicare Beneficiaries.

The numerous ways in which SSA is intertwined with Medicare demonstrate the many potential points of vulnerability if SSA's functioning is dismantled. From enrollment to premium payment to coordination of subsidies for low-income beneficiaries, Medicare beneficiaries with disabilities rely on the smooth functioning of SSA for access to their health care. Defendants' actions that dismantle SSA through mass workforce reductions and "restructuring" in the name of efficiency actually break down the agency's core functions and thwart Medicare's statutory mandate to shield older and disabled beneficiaries from the high costs of health care. The consequences to disabled Medicare beneficiaries are severe:

- Medicare enrollment may take over three years due to the increased time it takes

for staff to process SSDI applications combined with the required 24-month waiting period;

- Disabled individuals, who are disproportionately low-income, will have more difficulties enrolling in programs designed to ease their cost burdens. Research shows that Medicare beneficiaries under 65 with disabilities are significantly more likely to experience difficulty with the Medicare enrollment process than other beneficiaries, and this is likely due to the complicating factors of enrolling in the Part D Low-Income Subsidy and Medicare Savings Programs in addition to Medicare itself;[4]

- When SSA cannot process Medicare enrollment timely, it has downstream effects on beneficiaries' ability to obtain other types of insurance that have limited enrollment windows and require proof of Medicare enrollment. Delays in Medicare enrollment may cause beneficiaries to be unable to obtain Medicare Advantage plans, Part D drug plans, and "Medigap" supplemental plans (which act as secondary payors to traditional Medicare);

- Delays in Social Security payments may create a lapse in premium payments for people whose Medicare premiums are deducted from their Social Security checks;

- Individuals who experience an error with premium payments will experience severe delays in resolving the error and having Medicare coverage reinstated if it was canceled. *See, e.g.*, *infra* p. 11;

- Appeals to Social Security regarding Medicare eligibility, premium penalties,

---

[4] Juliette Cubanski et al., KFF, *Overall Satisfaction with Medicare is High, But Beneficiaries Under Age 65 With Disabilities Experience More Insurance Problems Than Older Beneficiaries* (Oct. 26, 2023), https://perma.cc/X66W-SVYV.

IRMAAs, or other issues that SSA handles in the first instance will take years to

resolve;

- Ultimately, any delay in Medicare coverage or benefits intended for low-income
  beneficiaries often means inability to obtain necessary health care.

*See* Christine Huberty, Ctr for Medicare Advocacy, *Cuts to the Social Security Administration Are Cuts to Medicare*, Alert (Mar. 6, 2025), https://perma.cc/A75K-JBDZ.

Delays in access to Medicare coverage and other problems caused by SSA understaffing were already occurring and will only worsen as defendants' mass workforce reductions continue. Aliss Higham, *Social Security in 'Death Spiral' After DOGE Cuts*, Newsweek (Apr. 7, 2025), https://www.newsweek.com/social-security-death-spiral-doge-cuts-2056252. Staffing was at 50-year low before the Trump administration, and cutbacks are now creating a "negative feedback loop" in which employee departures increase workload, in turn lowering morale and prompting more to leave. *Id*.

*Amicus* Medicare Rights Center runs a National Helpline through which its counselors answer questions about issues ranging from eligibility to denials and appeals. *See* https://www.medicarerights.org/contact. Recently Medicare Rights noted that it hears from people facing the consequences of SSA understaffing, such as long wait times for phone calls and limited, appointment-only availability for in-person services. Julie Carter, Medicare Rights Ctr, *Trump Administration and Elon Musk's DOGE Closing Social Security Offices*, *Harming Access to Services* (Mar. 13, 2025), https://perma.cc/N4X5-KK3V. Beneficiaries also report a "cascading effect" from disruptions and delays to SSA services affecting their Medicare coverage, ultimately leading to delays in accessing health care. *Id*. This situation will deteriorate as staffing cuts affect SSA's ability to handle the necessary volume of beneficiary issues related to Medicare. *Amicus*

CMA has already observed a significant increase in inquiries to its office regarding Medicare enrollment issues during the first three months of 2025 compared to the same period in 2024. Likewise, Connecticut's State Health Insurance Assistance Program, which provides free, unbiased Medicare counseling to beneficiaries and their caregivers, tracked an over 90% increase in calls statewide discussing Medicare enrollment between January and March of 2025 compared to the same period in 2024. These increases suggest that beneficiaries are having difficulties in resolving Medicare enrollment issues with SSA directly, as a consequence of defendants' actions.

CMA also hears from beneficiaries with disabilities who are forced to skip costly health care when SSA delays block their Medicare coverage. CMA has recently heard from several beneficiaries facing prolonged delays in having their Part B coverage reinstated after a premium issue was ostensibly resolved. One such beneficiary is a 67-year-old Connecticut woman with epilepsy and a thyroid disorder who fell behind in paying her Medicare Part B premiums because she mistakenly believed they were on autopay. SSA terminated her Medicare Part B coverage in February 2024. The beneficiary was abruptly unable to access care for her chronic conditions. In April 2024 she paid her past-due premiums as instructed, in-person at her local SSA office, and was told that SSA would "fast track" her Part B reinstatement due to her chronic health issues.

In the ensuing months, the beneficiary made four additional in-person visits and many calls to the same local SSA office, each time making another payment by check for Part B premiums she was told she owed. However, the "fast tracked" request for Part B reinstatement was apparently sitting at one of several understaffed and overburdened SSA Regional Payment Centers, which are charged with addressing a tremendous backlog of such requests, among other tasks. The beneficiary remained without Medicare Part B coverage for a full year, at which point she reapplied during Medicare's general annual open enrollment period. In early 2025 SSA enrolled her back

into Medicare Part B but assessed a late enrollment penalty on her monthly premium due to the "lapse" in coverage, as if she had been at fault for going a year without Part B. The beneficiary had forgone medical care for her chronic health conditions for the entire year she was without Medicare Part B coverage. Defendants' massive staffing cuts at SSA ensure that the backlog and delays at Regional Payment Centers will become even worse, and more disabled Medicare beneficiaries like this Connecticut woman will be unable to access required medical care and consequently experience worse health outcomes.

Directions to beneficiaries to conduct more of their business with SSA online ring hollow. First, SSA's website is currently experiencing chronic outages amid drastic cuts to the agency's technology staff. Lisa Rein et al., *Social Security Website Keeps Crashing, as DOGE Demands Cuts to IT Staff*, Wash. Post (Apr. 7, 2025) (describing surge of traffic to SSA website as its phone systems are overwhelmed, as well as crashing of the online systems used by SSA Field Office staff to serve the public), https://wapo.st/4lnBp63. Second, as plaintiffs have noted, using SSA's online service is simply not a viable option for many older adults and people with disabilities, who are less likely to own a computer or to use the internet than others. Complaint ¶ 52.

Defendants' mass workforce reductions and other policy changes that hamstring SSA's ability to perform its core functions necessarily undermine the Medicare program as well as Social Security. SSA is being squeezed from all directions by defendants' actions, with growing staff shortages affecting all points of beneficiary contact, from website crashes to interminable phone delays to greatly overburdened offices. Medicare beneficiaries with disabilities are disproportionately impacted as systemic delays and breakdowns force them to forgo medically necessary health care.

**CONCLUSION**

This Court should grant the plaintiffs' motion for a preliminary injunction.

Dated:  April 9, 2025                    Respectfully submitted,

                                          /s/Alice Bers
                                         Alice Bers
                                         CENTER FOR MEDICARE ADVOCACY
                                         P.O. Box 350
                                         Willimantic, CT 06226
                                         (860) 456-7790
                                         abers@medicareadvocacy.org

                                         *Counsel for Amici Curiae*